UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09-29-14
```

RICARDO RODRIGUEZ,

                        Plaintiff,

-v-

CAROLYN W. COLVIN,
*Acting Commissioner of Social Security*,

                        Defendant.

No. 12-cv-3931 (RJS) (RLE)
ORDER ADOPTING REPORT AND
RECOMMENDATION

RICHARD J. SULLIVAN, District Judge:

Plaintiff Ricardo Rodriguez brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's final decision denying his claims for disability insurance.[1] (Doc. No. 1.) Now before the Court is the Report and Recommendation of the Honorable Ronald L. Ellis, Magistrate Judge, recommending that the Court deny Plaintiff's motion for judgment on the pleadings and grant Defendant's cross-motion for judgment on the pleadings. (Doc. No. 31 (the "Report").) For the reasons set forth below, the Court adopts the Report in its entirety.

I. BACKGROUND

The facts of the case are described in detail in the Report. (*See* Report at 2–10.) Put briefly, Plaintiff was laid off from his employment in 2002 and filed for Social Security disability benefits on June 4, 2003, claiming that he suffered from gout. (*Id.* at 2.) After the Social Security Administration (the "SSA") denied the application a month later, Plaintiff requested a hearing

---

[1] Plaintiff originally named Michael J. Astrue, the then-Commissioner of Social Security, as Defendant. On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is substituted as Defendant. The Clerk of Court is respectfully directed to correct the caption accordingly.

before an administrative law judge ("ALJ") for the SSA. (*Id.* at 2.) Following the hearing, ALJ George Yatron found that Plaintiff was not disabled, and the SSA's Appeals Council (the "Council") denied Plaintiff's request for review. (*Id.*)

Plaintiff brought a civil action in this Court in 2006, but the case was remanded to the Council by stipulation. (*Id.*) The Council vacated ALJ Yatron's decision and remanded the case to ALJ Paul Heyman to consider whether Plaintiff "had a severe mental impairment(s)," in addition to his physical impairments, such that he should have been found disabled. (*Id.*; Doc. No. 8 ("SSA Administrative Record" or "R.") at 223–24.[2]) ALJ Heyman held a hearing on May 13, 2008 (Report at 2), after which he found Plaintiff to be not disabled. (R. at 199-201.) Plaintiff brought suit again in this Court, which remanded the case to the Council to reconsider and "more fully develop the record." (Report at 2–3.) On remand to ALJ Heyman, the Council merged the case with additional claims that Plaintiff had filed. (*Id.* at 3) The ALJ held another hearing on January 19, 2011, and yet again found that Plaintiff was not disabled. (*Id.*; *see also* R. at 354.) The Council denied a request for review, and on May 17, 2012, Plaintiff filed his third suit, which is now before the Court. (Report at 3.)

On June 26, 2012, the Court referred the case to Judge Ellis. (Doc. No. 4.) On February 8, 2013, Plaintiff filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing for reversal of ALJ Heyman's findings. (Doc. No. 14.) On May 21, 2013, Defendant filed a cross-motion for judgment on the pleadings. (Doc. No. 24.) On January 14, 2014, Judge Ellis entered his Report recommending that this Court find against Plaintiff. Judge

---

[2] The SSA Administrative Record is a 667-page filing containing the entire Record of this case. Due to its size, the Record is broken up into five consecutively-paginated parts, including a document (Doc. No. 8) and four "attachments" to that document. The Record includes, *inter alia*, hearing transcripts, ALJ and SSA decisions, physician notes and assessments, and various other exhibits.

Ellis concluded that the ALJ applied the correct legal principles in denying Plaintiff's claim, and that he properly weighed the medical evidence. Specifically, Judge Ellis found that the ALJ properly applied the five-step sequential analysis required for evaluating social security claims, *see* 20 C.F.R. §§ 404.1527, 416.920, and that substantial evidence supported the ALJ's weighing of the evidence, which consisted of: physical health records, including evaluations from Drs. Stephen Cha ("Cha"), Minesh Shah ("Shah"), and Juliet Widoff ("Widoff"); mental health records, including an evaluation from psychiatrist Dr. Anthony Stern ("Stern"); examination results from consulting doctors including Drs. Sharon Revan ("Revan"), Mandakini Patel ("Patel"), and Herb Meadow ("Meadow"); and notes and an evaluation from a social worker, Jose Rodriguez ("Rodriguez"). (Report at 15–20.)

Plaintiff filed objections to the Report on January 31, 2014 (Doc. No. 32 (the "Objections" or "Obj.")), and Defendant filed an opposition brief on February 14, 2014 (Doc. No. 33). Plaintiff's objections challenge Judge Ellis's findings with respect to (1) the ALJ's weighing of the evidence in making his residual functional capacity ("RFC") finding (*see* Obj. at 2–12), and (2) the ALJ's use of vocational expert testimony to find that Plaintiff could serve as a clerical worker or clerk (*see id.* at 13–14).

## II. LEGAL STANDARDS

### A. Social Security Benefits Claims

A claimant deemed "disabled" under the Social Security Act is entitled to benefits. 42 U.S.C. § 432(a)(1). The definition of disability – which is "virtually identical" in a disability insurance case and a Supplemental Security Income ("SSI") case, *see Hankerson v. Harris*, 636 F.2d 893, 895 n.2 (2d Cir. 1980) – requires a claimant to demonstrate the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."

3

20 C.F.R. §§ 404.1505(a), 416.905(a).

To determine whether a claimant is disabled, an ALJ must apply a five-step test, 20 C.F.R. § 404.1520(a)(4), which the Second Circuit has summarized as follows:

> The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits [his] capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform [his] past relevant work. Finally, if the claimant is unable to perform [his] past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

The claimant bears the burden of proof for the first four steps, and the Commissioner bears the burden for the final step. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012). The ALJ must weigh all medical evidence and other "relevant evidence" he or she receives, 20 C.F.R. §§ 404.1520b(b), 416.927(b), but need not resolve all inconsistences, as long as he or she makes findings based on substantial evidence. *See Laine v. Soc. Sec. Admin., Comm'r*, No. 07-cv-1251 (RO), 2013 WL 2896968, at *4 (S.D.N.Y. June 13, 2013) ("The ALJ is not required by the regulations to reconcile conflicting medical testimony, but is required to fully assess the record and provide findings that are supported by substantial evidence in the record.").

When assessing a claimant's claim, the ALJ may use the services of a vocational expert in order to determine whether the plaintiff could perform his "past relevant work, either as [he] actually performed it or as generally performed in the national economy." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). In response to hypothetical questions posed by the ALJ,

4

the expert may offer testimony about whether a person with "the physical and mental limitations imposed by [plaintiff's] medical impairment(s)" would be able to work. *Id.* § 404.1560(b)(2). The ALJ may rely on the expert's testimony as long as the facts included in the hypothetical are based on substantial evidence and "accurately reflect the limitations and capabilities of the claimant." *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).

### B. District Court Review

In reviewing a denial of Social Security benefits, the Court must accept the ALJ's factual findings if (1) the ALJ applied the "correct legal standards" and (2) "substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). The Court "review[s] the administrative record de novo" to make these determinations. *Pollard v. Halter*, 377 F.3d 183, 188 (2d Cir. 2004). Substantial evidence is "more than a mere scintilla" of evidence and requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). The Court must consider "the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999) (internal quotation marks omitted). Nonetheless, the existence of contrary evidence does not suffice to find in favor of Plaintiff if substantial evidence otherwise supports the ALJ's findings. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The Court may reject a finding only if "a reasonable factfinder would *have to conclude otherwise.*" *Brault* 683 F.3d at 448 (2d Cir. 2012) (internal quotation marks omitted) (emphasis in original).

### C. Review of the Report and Recommendation

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). If a party properly objects to a finding in the Report, the Court reviews the finding de

5

novo. 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3). Properly raised objections must be "clearly aimed at particular findings" in the Report. *Harden v. LaClaire*, No. 07-cv-4592 (LTS), 2008 WL 4735231, at *1 (S.D.N.Y. Oct. 27, 2008). Therefore, objections may not be "conclusory or general" and may not simply rehash or reiterate the original briefs to the magistrate judge. *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009). Moreover, objections generally may not be new arguments "that were not raised, and thus were not considered, by the magistrate judge." *Jackson v. Brandt*, No. 10-cv-05858 (PAC), 2012 WL 2512015, at *6 (S.D.N.Y. June 29, 2012); *see also Berbick v. Precinct 42*, 977 F. Supp. 2d 268, 273 (S.D.N.Y. 2013) ("A motion referred to a magistrate judge is not a trial run." (alterations and internal quotation marks omitted)).

Absent proper objections, the Court accepts all parts of the Report that are not clearly erroneous. *See Berbick*, 977 F. Supp. 2d at 273. Thus, the Court reviews a party's *improper* objections, including those that seek a "second bite at the apple" by "attempt[ing] to relitigate the entire content" of the arguments made before the magistrate judge, only for clear error. *Thomas*, 674 F. Supp. 2d at 511. In clear error review, the Court should reverse a finding only if it is "left with the definite and firm conviction that a mistake has been committed," and not merely if it "would have decided the case differently." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (internal quotation marks omitted).

### III. DISCUSSION

Plaintiff's objections largely fail to address the Report and instead target the ALJ's findings. Accordingly, the Court considers the objections in two categories: (A) those which merely object to the ALJ's findings and are entitled to review only for clear error, *see supra* Part II.C; and (B) those which properly object to the Report and are reviewed de novo. Each of these categories of objections will be considered in turn.

### A. Findings Reviewed for Clear Error

In his submission to the Court, Plaintiff purports to object to (1) the limited weight the ALJ gave to Stern's opinion; (2) the ALJ's determination that Rodriguez's opinion was unsupported and entitled to little weight; (3) the sufficiency of evidence that Plaintiff was malingering; (4) the ALJ's evaluation of Shah's medical assessment; and (5) the ALJ's failure to indicate what weight was given to Patel's opinion. Because these objections ignore the Report and simply reiterate arguments made to Judge Ellis, they are not proper objections, and are reviewed only for clear error.

With regard to the second, third, and fourth objections, the Court easily finds that the Report was not clearly erroneous in recommending that the Court uphold the ALJ's findings. However, the first objection, which takes exception to the ALJ's refusal to give Stern's assessment controlling weight and to the weight ultimately given to Stern's opinion, and the fifth objection, which challenges the ALJ's failure to specify the weight given to Patel's assessment, present closer calls that merit further discussion.

#### 1. Stern's Assessment and the Treating Physician Rule

Because the ALJ did not reference the treating physician rule by name, the Court must conduct a "searching review of the record" to determine whether the Report was clearly erroneous in recommending affirmance of the limited weight the ALJ gave Stern's opinion. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("[I]t is unclear on the face of the ALJ's opinion whether the ALJ considered (or even was aware of) the applicability of the treating physician rule. We therefore have undertaken a searching review of the record to assure [that plaintiff] received the rule's procedural advantages.").

According to SSA regulations, a treating physician's opinion must be given "controlling weight" if it is "well-supported" and "not inconsistent with the other substantial evidence in

7

[Plaintiff's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran*, 362 F.3d at 32 (noting controlling weight does not apply where "treating physician issued opinions that [were] not consistent with other substantial evidence in the record"). In determining whether a treating physician's opinion is consistent with other substantial evidence in the record, "genuine conflicts in the medical evidence are for the ALJ to resolve." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

Even where a treating physician's opinion is not entitled to controlling weight, the ALJ must consider certain specific factors in determining how much weight the opinion should ultimately receive, including, *inter alia*, "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (*citing Burgess*, 537 F.3d at 129); *see also* 20 C.F.R. § 404.1527(c)(2) ("When we do not give the treating source's opinion controlling weight, we apply the factors [listed above] in determining the weight to give the opinion."). "After considering [these] factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129; *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Failure to provide "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell*, 177 F.3d at 133.

Here, in weighing Stern's opinion, the ALJ took note of (1) the conflict between the assessments of Rodriguez and Stern as to whether Plaintiff was malingering (R. at 351),[3] and (2)

---

[3] Plaintiff also objects to the Report's finding that the ALJ considered this conflict in weighing Stern's opinion in the first place. However, because this objection was properly made, it will be reviewed de novo. *See infra* Part III.B.1.

8

the conflict between Stern's conclusion that Plaintiff was "markedly limited" in many areas of functioning due to psychiatric impairments and the treatment notes taken by Stern, Rodriguez, and Meadow, which reflected a much more positive perspective. (*Id.*; *see also id.* at 526–531.) The ALJ accordingly concluded that Stern's opinion conflicted with substantial evidence in the record and thus was not owed controlling weight. (R. at 351.)

The Court finds that the conflicts between Stern's opinion and Rodriguez's opinion with regard to malingering, and between Stern's opinion and the treatment notes of the other mental health specialists with regard to the severity of Plaintiff's condition, were sufficient to undermine the presumption of the treating physician rule. Indeed, the Court finds that Stern's answers to the RFC questionnaire "paint[] a bleak picture of [Plaintiff's] mental health that is quite at odds with the treatment notes." *Rojas v. Astrue*, No. 09-cv-6698 (DLC), 2010 WL 1047626, at *7 (S.D.N.Y. Mar. 22, 2010). The Report's finding that there was sufficient basis for the ALJ to give limited weight to Stern's opinion was therefore not clearly erroneous.

Moreover, in determining how much weight to ultimately give Stern's opinion, the ALJ adequately considered the factors he was required to consider in evaluating the non-controlling opinion of a treating physician, by outlining in detail the history of Stern's treatment of Plaintiff and the evidence supporting Stern's assessment. *See id.* (noting that ALJ "essentially addressed each of the 'factors'" where ALJ observed that physician "was a psychiatrist, and therefore a specialist; considered treatment notes spanning the entire period [of treatment]; and considered the evidence to support [physician's] assessment"). Finally, the ALJ gave "good reasons" for his decision to give Stern's opinion limited weight, again citing the conflicts with Rodriguez's opinion regarding malingering and with the treatment notes. (R. at 351; *see also, e.g., id.* at 515 (observing Plaintiff had a "pleasant (deceptively upbeat) affect"); 522 (noting Plaintiff was considering going

9

to college); 526 (noting Plaintiff was "able to sleep considerably better").) Accordingly, the Court finds no clear error in the Report's conclusion that the ALJ was justified in giving limited weight to Stern's opinion.

2. Failure to Indicate the Weight Given to Patel's Opinion

Plaintiff further argues that the ALJ's failure to specify the weight given to Patel's opinion requires remand. (Obj. at 11.) The Court disagrees. First, Judge Ellis was certainly correct in finding that the ALJ properly considered Patel's evaluation and took the assessment into account in determining Plaintiff's RFC. (*See* Report at 19; R. at 346.) That the ALJ did not explicitly assign a specific, quantifiable weight to the evaluation should not be dispositive. Second, even to the extent that the ALJ's failure to assign a specific weight to Patel's opinion constituted error, the failure was a harmless one. *See Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). The ALJ concluded that Patel's evaluation "further support[ed] the finding that [Plaintiff] can perform sedentary work activities," and Judge Ellis's determination that this was correct was not clearly erroneous. (R. at 346; *see id.* at 114–19 (indicating a "fair" prognosis and otherwise assessing Plaintiff positively, notwithstanding "moderate to severe impairment [in] sitting, standing, walking, bending, lifting, climbing and doing [activities of daily living] secondary to gouty arthritis").) Thus, the Court adopts Judge Ellis's recommendation and rejects Plaintiff's objection regarding the ALJ's consideration of Patel's opinion.

B. Findings Reviewed De Novo

Plaintiff makes proper objections to the Report regarding Judge Ellis's (1) finding that the ALJ actually considered the conflict between Stern's opinion and Rodriguez's opinion with regard to malingering in weighing Stern's assessment; (2) finding that the ALJ considered Plaintiff's increased functioning when in compliance with medications; (3) conclusion that the ALJ was not required to reconcile the opinions of treating physicians Shah and Widoff; (4) failure to address

10

whether the ALJ appropriately weighed the opinion of Cha; and (5) failure to address gaps in the hypothetical posed by the ALJ to the vocational expert. Because these objections properly challenge particular findings in the Report, they must be reviewed de novo. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

### 1. ALJ's Consideration of the Stern and Rodriguez Conflict

Plaintiff objects that Judge Ellis approved of the limited weight the ALJ afforded Stern's opinion in part because of the conflict between Stern's views and Rodriguez's views regarding malingering. Plaintiff argues that "there is no evidence [that] the ALJ rejected the opinions from Dr. Stern on the basis of [Rodriguez's] statement that [Plaintiff] might be a malingerer" (Obj. at 2), and that Judge Ellis's recommended action was thus "based on different grounds than those provided" by the ALJ. (*Id.*)

This assertion is plainly incorrect. In explaining his determination that Stern's opinion was entitled to limited weight, the ALJ noted, immediately following a summary of Stern's opinion, that "[a]lthough Dr. Stern indicated that the claimant was not a malingerer, this is not consistent with the assessment of his colleague. In addition, the limitations reported by Dr. Stern are not supported by the psychiatric progress notes." (R. at 351.) Since the ALJ clearly relied on the inconsistencies between Stern's opinion and Rodriguez's opinion with respect to malingering, it cannot be said that Judge Ellis recommended affirmance on grounds unconsidered by the ALJ.

### 2. Plaintiff's Functioning with Medication

Plaintiff also objects that Judge Ellis improperly "conclude[d] that the limitations described by ... Rodriguez are contradicted by evidence [that] Plaintiff's functioning increased when he was compliant with his medications." (Obj. at 5.) Once again, Plaintiff asserts that this was a finding "that was not made by the ALJ, and thus, cannot be used to affirm the decision denying benefits."

(*Id.*) Further, Plaintiff objects that even if the ALJ *had* concluded this, using it as a basis for finding Plaintiff to be not disabled would be improper. (*Id.* at 5–6.)

Contrary to this objection, however, the ALJ *did* explicitly consider Plaintiff's increased functioning while on medication in giving Rodriguez's opinion limited weight. (*See* R. at 351.) Specifically, the ALJ's decision states: "Mr. Rodriguez's opinion is not entirely supported by [Plaintiff's] psychiatric progress notes. The treatment records show that the claimant was more functional when he attended church and took his medication, and that he engaged in many activities during these periods." (*Id.*) Nor was it *improper* for the ALJ to consider, as one of the many factors he looked to in determining what weight to give to Rodriguez's opinion, that Plaintiff improved when he took his prescribed medications. *See, e.g., Matta v. Astrue*, 508 F. App'x 53, 57 (2d Cir. 2013) (upholding ALJ's findings, including that "plaintiff's condition deteriorated only after he stopped taking his medication," and that plaintiff responded well to treatment). Accordingly, Judge Ellis's finding was wholly justified.

### 3. Reconciling the Opinions of Shah and Widoff

Plaintiff next objects to Judge Ellis's finding that the ALJ was not required to reconcile the opinions of Shah and Widoff, which Plaintiff believes was improper because the assessments of the two doctors differed slightly. (Obj. at 7–9.) Plaintiff asserts that Judge Ellis should have recommended a remand so that their opinions could be further reconciled. (Obj. at 9–10.) However, since substantial evidence supports the ALJ's conclusion that Shah's and Widoff's assessments were not materially in conflict and were "generally" consistent with each other – specifically concerning Plaintiff's ability to sit for a full day with normal breaks, lift 6 to 10 pounds or more, and travel by public transportation (R. at 182–83, 249–50) – the ALJ was not required to reconcile every immaterial distinction between the two. *Mongeur v. Heckler*, 722 F.2d 1033, 1040

(2d Cir. 1983); *see also Laine*, 2013 WL 2896968, at *4. Thus, it was clearly not improper for Judge Ellis to affirm the ALJ's findings without a further remand.

### 4. Cha's Opinion

Plaintiff also asserts that Judge Ellis overlooked his arguments regarding Cha's conclusions that Plaintiff cannot stoop and can stand for less than two hours per day. Plaintiff argues that the ALJ "failed to properly explain" the decision to give this opinion "some weight, but less weight than [that given to] other medical opinions" (R. at 346, 349), and that the Report did not address this flaw. (*See* Obj. at 10.)

The ALJ rejected Cha's determination that Plaintiff is unable to stoop because it was "not well supported by the objective laboratory and clinical data in the record and . . . not consistent with any other opinion of record." (R. at 349.) This decision to accord limited weight is well supported, as contrary to Plaintiff's claims, there *is* substantial evidence in the record that Plaintiff is able to stoop. In fact, Shah's answers to the RFC questionnaire indicated not only that Plaintiff had the ability to stoop, but that he could do so "frequently." (*Id.* at 250.) A year later, Revan noted that Plaintiff had "[f]ull ROM [range of motion] of hips, knees, and ankles bilaterally." (*Id.* at 361.) Given the record before him, the ALJ was certainly entitled to resolve this discrepancy in favor of Shah and Revan. *Gunter*, 361 F. App'x at 199 ("[G]enuine conflicts in the medical evidence are for the ALJ to resolve.").

Similarly, substantial evidence contradicted Cha's finding that Plaintiff could stand or walk less than two hours per day. (*See* R. at 249.) Thus, unlike the case Plaintiff cites for the proposition that the ALJ was required to develop the record to determine "just how much less than 2 hours a day" Plaintiff could stand (Obj. at 11), *see Melendez v. Astrue*, 630 F. Supp. 2d 308, 314–15 (S.D.N.Y. 2009), there was no "obvious gap in the administrative record" regarding Plaintiff's abilities. Rather, there was a small discrepancy in the record, which the ALJ was entitled to resolve

13

against Plaintiff. *See Gunter*, 361 F. App'x at 199. Accordingly, even if Judge Ellis overlooked Plaintiff's arguments regarding Cha's assessment,

### 5. Gaps in the Hypothetical Posed to the Vocational Expert

Finally, Plaintiff objects that Judge Ellis overlooked alleged deficiencies in the hypothetical that the ALJ posed to a vocational expert at Plaintiff's administrative hearing on January 19, 2011. (Obj. at 13.) In the hypothetical, the ALJ asked what jobs a 47-year-old man with Plaintiff's limitations could perform. (R. at 656.) However, Plaintiff argues that the hypothetical did not incorporate all of the limitations that the ALJ had otherwise recognized in determining Plaintiff's RFC. (Obj. at 13.) Specifically, Plaintiff argues that the ALJ "found that [Plaintiff] had moderate difficulties in social functioning and in concentration, persistence, or pace," but that the hypothetical "only limited [the hypothetical person] to mentally low stress tasks, no more than occasional contact with the public, and simple repetitive tasks." (*Id.*)

The out-of-circuit cases Plaintiff cites for the proposition that all limitations must be referenced in the hypothetical (*see* Obj. at 13–14), and other cases from this district, indicate that where, as here, "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace . . . , limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011); *accord Rivera v. Colvin*, No. 11-cv-7469 (LTS), 2014 WL 3732317, at *41 (S.D.N.Y. July 28, 2014) (citing *Winschel* for same proposition); *Marquez v. Colvin*, No. 12-cv-6819 (PKC), 2013 WL 5568718, at *17 (S.D.N.Y. Oct. 9, 2013) (same). Thus, because the ALJ made a well-supported finding that Plaintiff has the ability to engage in simple, routine tasks and unskilled work despite his limitations, the hypothetical was not erroneous. Accordingly, the vocational expert's testimony "accurately

reflect[ed] the limitations and capabilities of" Plaintiff, *see Calabrese*, 358 F. App'x at 276, and the ALJ properly relied on it.

## IV. CONCLUSION

For the foregoing reasons, the Court adopts the Report in all material respects and finds that the ALJ's decision denying Plaintiff's claims for disability insurance applied the correct legal standards and was supported by substantial evidence. Accordingly, Plaintiff's motion for judgment on the pleadings is DENIED and Defendant's cross-motion is GRANTED. The Clerk of the Court is respectfully requested to terminate the motions pending at docket entries 12 and 24, and to close this case.

SO ORDERED.

Dated:   September 28, 2014
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

